**E-FILED**
Thursday, 06 September, 2012  05:42:54 PM
Clerk, U.S. District Court, ILCD

### IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) | Judge |
| MAURICE MEHLING, an individual d/b/a PROJECT TE', | ) ) ) | Magistrate Judge |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT

Plaintiff The Board of Trustees of the University of Illinois ("Plaintiff" or "the University"), by and through its attorneys, Freeborn & Peters LLP, complains against Defendant Maurice Mehling, an individual d/b/a Project Te' ("Defendant" or "Project Te'") as follows:

## NATURE OF ACTION

1.       This is a civil action alleging direct and/or contributory trademark infringement, unfair competition, and trademark dilution arising under Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1)(a) (trademark infringement), 1125(a) (unfair competition), and 1125(c) (trademark dilution), as well as violations of the Illinois Trademark Registration and Protection Act, 765 ILCS § 1036/1, *et seq.*, Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq.*, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*, common law misappropriation of trademark, and common law unfair competition.

2.       As described more fully below, without the authority of the University, Defendant has manufactured and sold t-shirts that expressly extol "drinking" and "debauchery," and that bear certain marks of the University, including, but not limited to, the University's UNIVERSITY OF

ILLINOIS word mark, its "BLOCK I" design mark, and its CHIEF ILLINIWEK design mark. Defendant's unauthorized use of such marks has produced and will continue to produce consumer confusion and deception, and will dilute and tarnish the University's trademarks.

3.      Although Defendant has been apprised of its illegal conduct, it has largely ignored the University's communications and deliberately refused to comply with the University's demands, thereby manifesting its intent to continue to wrongfully infringe upon, dilute and tarnish the University's trademarks. Unless enjoined, Defendant will cause further irreparable injury, leaving the University with no adequate remedy at law. In addition, the University seeks an award of damages and an accounting of Defendant's revenues and/or profits, as well as attorneys' fees, costs, and expenses for Defendant's intentional and willful conduct.

## THE PARTIES

4.      Plaintiff, The Board of Trustees of the University of Illinois, is a body politic and corporate established under the constitution and laws of the State of Illinois, to govern and exercise authority over the University of Illinois, whose original campus is located in Urbana-Champaign. Plaintiff is referred to herein as "the University."

5.      Defendant Maurice Mehling is an individual who, on information and belief, resides at 2209 East University Ave., Ste. B, Urbana, Illinois 61802, and is doing business as Project Te', a custom screen printing and embroidery business entity with its principal place of business also at 2209 East University Ave., Ste. B, Urbana, Illinois 61802.

## JURISDICTION AND VENUE

6.      This action arises under the United States Trademark Laws, commonly known as the Lanham Act. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (Lanham Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (trademark actions). The Court has supplemental jurisdiction over Plaintiff's other claims

pursuant to 28 U.S.C. § 1367(a).  This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

7.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), in that the Defendant transacts business within this judicial district, including the sale of infringing products and/or services that are the subject of this action.

## ALLEGATIONS COMMON TO ALL COUNTS

### PLAINTIFF'S DISTINCTIVE, FEDERALLY-REGISTERED TRADEMARKS

8.     The University owns numerous long-standing and well-known trademarks, trade names, and logos that are used in connection with the University, its athletic teams, and merchandise sold by the University bearing those marks.

9.     For many years, the University and its authorized business partners, sponsors and/or licensees, have used these trademarks, specifically including, for purposes of this Complaint, the UNIVERSITY OF ILLINOIS word mark, the "BLOCK I" design mark, and the CHIEF ILLINIWEK design mark, in connection with the University's business of organizing, conducting, and promoting the University of Illinois in Urbana-Champaign.

10.     In addition to common law trademark rights in the marks set forth in Paragraph 9, the University is the exclusive owner of the following valid, uncontestable, and enforceable trademark registrations with the United States Patent and Trademark Office ("USPTO"), among others:

- Registration No. 1,836,231 for UNIVERSITY OF ILLINOIS LEARNING & LABOR CHARTERED 1867 AGRICULTURE SCIENCE & ART design mark for, among other goods and services, "belts, caps, hats, shoes, athletic jerseys, sweatshirts, sweatpants, sweatjackets, warm-up suits, shirts, shorts, jackets, infant wear, sleepwear, pants, rainwear, knitwear; namely gloves, mittens, scarves, socks" in Class 25 (U.S. Class 39);

- Registration. No. 2,315,363 for "BLOCK I" design mark for, among other goods and services, "Clothing, namely, Aprons, adult and children's jackets, and vests, men's shirts, sport shirts, ties, night shirts, Ladies' tops, adult and children's jerseys, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, gloves, mittens, golf sweaters, ladies' and men's and children's t-shirts, baseball shirts, football shirts, football-style jerseys, ladies' and mens's shorts, socks, adult and children's warm-up suits, baby sleepers, baby shirts, western hats, tennis hats, wrist-bands and sweatbands" in Class 25 (U.S. Classes 22 and 39); and

- Registration No. 2,232,024 for the CHIEF ILLINIWEK design mark for, among other goods and services, "Clothing, namely, aprons, adult jackets, and vests, men's shirts, sport shirts, ties, Ladies' tops, caps, sport caps, visor caps, ski caps, scarves, sweaters, ponchos, golf sweaters, ladies' and men's and children's t-shirts, football shirts, baby sleepers, baby shirts, tennis hats" in Class 25 (U.S. Classes 22 and 39).

All of the common law and registered marks set forth in Paragraphs 9 and 10 are collectively referred to herein as the "*University Marks*." True and correct copies of the registration certificates, along with print outs of the status of each registered mark from the USPTO's database, are respectively attached as Exhibits A–C hereto.

11.     Through decades of longstanding and continual use, the University's trademarks, including, but not limited to, the University Marks, have developed extensive goodwill and have attained a high degree of recognition and distinctiveness throughout the U.S. in connection with goods and services commonly associated with a university as an educational institution.

12.     Purchasers and prospective purchasers, as well as other members of the public, are familiar with the University Marks and associate the University Marks with the University; they understand and expect that a wide variety of goods and services offered in connection with the University Marks are affiliated, sponsored, and/or licensed by the University.

13.     The University Marks are presently used in connection with a wide-array of goods and services offered by the University and its authorized licensees. (*See* Exhibit D hereto.)

14.     The University has expended considerable amounts of time, effort and expense to promote its services and products throughout the United States and to protect the rights associated with the University Marks.

15.     As a result of its extensive marketing efforts and its continuous use of the University Marks for many decades, the University has developed substantial rights and goodwill in the University Marks, and the public has come to associate such marks as identifiers of source, approval, and/or licensing in connection with the various goods and services offered by the University and its authorized licensees.

**DEFENDANT'S INTENTIONAL AND WILLFUL INFRINGEMENT OF THE UNIVERSITY MARKS**

16.     Defendant is engaged in the advertising, marketing, manufacturing, selling, and production of custom screen printing and embroidery goods and/or services, such as t-shirts and other apparel, that infringe the University's marks in the United States.

17.     Specifically, Defendant has manufactured and sold t-shirts bearing the unauthorized use of the University's trademarks to third-party consumers in connection with "Unofficial" St. Patrick's Day for 2011.

18.     On information and belief, "Unofficial" St. Patrick's Day is an event held on various university campuses around the country, which aims to replace the celebration of the official St. Patrick's Day holiday with excessive drinking of alcohol.  The event is usually celebrated one or two weeks before or after a university's spring break.

19.     On or about March 2, 2011, a third-party named Richard Lacy provided a design to Defendant and submitted an order to Defendant for seventy-two (72) t-shirts, all bearing that design, with a deposit of $300.00.

20.    The design in question resembles the label on a bottle of Budweiser beer, which itself may infringe Anheuser-Busch's trademarks.  The design says "Genuine" on the left and right side of block wording in the middle, which states, among other things: "Unofficial Day of Drinking", "Quench our Thirst in the Name of Debauchery", "World's Largest Shit Show", and, at the very bottom, "University of Illinois, Champaign, IL."   In addition to the University's UNIVERSITY OF ILLINOIS word mark, the design also bears other marks of the University, including, but not limited to, the "BLOCK I" design mark and the CHIEF ILLINIWEK design mark.  The t-shirts bearing this design that were produced and sold by Defendant are hereinafter referred to as the "'Unofficial' t-shirts," an image of which is attached hereto as Exhibit E and reproduced immediately below.



21.     On or about March 4, 2011, Defendant filled Mr. Lacy's order by screen printing the design onto the "Unofficial" t-shirts, posting the design on the Internet, and selling the "Unofficial" t-shirts to Mr. Lacy.  Defendant received a total of $618.77 as payment.  (*See* Lacy Invoice, attached hereto as Exhibit F.)

22.     That same day, Defendant sold four (4) additional "Unofficial" t-shirts to another third-party consumer named Jake Murdoch for a total of $51.74.  (*See* Murdoch Invoice, attached hereto as Exhibit G.)

23.     On information and belief, both Mr. Lacy and Mr. Murdoch re-sold the "Unofficial" t-shirts manufactured by Defendant to others during the "Unofficial" St. Patrick's Day event.

24.     Defendant, Mr. Lacy and Mr. Murdoch have never received the University's permission or approval to use the University Marks, nor have Defendant, Mr. Lacy or Mr. Murdoch ever contacted the University to request permission to use the University Marks in relation to its goods.

25.     Defendant is not a manufacturer licensed by the University's Trademark and Licensing Office, and is not authorized to use the University's trademarks.  The authorized licensing representative of the University is Collegiate Licensing Company ("CLC"). Accordingly, no one is authorized to manufacture, distribute, advertise, offer for sale and/or sell any products bearing the University's trademarks without the express written consent of CLC (on behalf of the University) and/or the University.

26.     On or about March 8, 2011, counsel for CLC contacted Defendant to protest Defendant's unauthorized use of the University's trademarks and to demand that Defendant immediately cease and desist using the University Marks.  (*See* 3/8/11 Letter, attached hereto as

Exhibit H.)  In response, Defendant denied any wrongdoing and tried to minimize its involvement in the infringing activity by characterizing its actions as mere printing for a client.

27.     The parties exchanged e-mail correspondence in June 2011 in an attempt to resolve this dispute, but were unsuccessful in their attempts.

28.     On February 8, 2012, counsel for the University sent another letter to Defendant, again protesting Defendant's unauthorized use of the University's trademarks and demanding that Defendant immediately cease and desist from the printing, sale, offering for sale and/or distribution of the "Unofficial" t-shirts and any other products bearing any trademarks of the University, and demanding payment for the licensing fee for printing and sale of the "Unofficial" t-shirts and legal fees incurred to this point, among other items.  (*See* 2/8/12 Letter, attached hereto as Exhibit I.)

29.     After exchanging voicemails, counsel for the University finally spoke to Defendant on or about April 2, 2012.  Defendant again denied any wrongdoing and, despite having been put on notice of the University's trademark rights, said it was his customers' responsibility to avoid unauthorized use of the University's trademarks, not Defendant's, which, therefore, suggests to the University that such infringements will continue unless enjoined.

30.     To date, Defendant has refused to comply with the University's demands.

31.     Defendant is located in the area of the University's Champaign-Urbana campus and, on information and belief, should be aware of the University's well-known trademarks, including the University Marks, and that such marks are currently in use.  Defendant was further put on notice of the University's rights in the University Marks since at least March 8, 2011 when the University (through its agent, CLC) sent an initial cease and desist letter to Defendant.

32.     On information and belief, Defendant's unauthorized use of the University Marks would result in damage and injury to the University as it is likely to cause confusion, mistake and deception on behalf of consumers with respect to the origin and source of Defendant's goods in that the public will mistakenly believe that the "Unofficial" t-shirts, and any other shirts bearing the University Marks or other trademarks of the University, have been licensed, sponsored or authorized by the University.  As a result, consumers are deceived and injured by Defendant's infringing activities.

33.     Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University.  Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

34.     In addition, Defendant's unauthorized use of the University Marks in connection with a t-shirt that expressly extols "drinking" and "debauchery" is of questionable taste, and has injured and threatened future injury to the University by specifically diminishing its goodwill in the University Marks and tarnishing these well-known marks.

35.     On information and belief, Defendant's infringing activities are not limited to the single t-shirt in question, and Defendant continues to use the University Marks and other trademarks of the University without a license.

36.     Defendant's unauthorized use of the aforementioned marks infringes upon and violates the rights of the University in its well-known marks, and has damaged and is continuing to cause irreparable injury to the University's business, reputation and goodwill.

## COUNT I:
## FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1)(a))

37.     The University incorporates by reference the allegations contained in Paragraphs 1 through 36 as if fully set forth herein.

38.     The University owns, has the exclusive right to use, and  uses the University Marks in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

39.     The University has spent substantial amounts of money and effort developing the University Marks, as well as goodwill and reputation in its business.

40.     The University has the exclusive right to market, brand, and sell goods throughout the United States using the University Marks.

41.     Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant – use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause a mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

42.     Defendant has, without consent or authorization from the University, used the University Marks to manufacture, sell, offer to sell, distribute and/or advertise products and services which are the same type of goods that are offered by the University (*i.e.*, t-shirts), and which are of questionable taste and legality through its website.

43.     The use of the University Marks by Defendant deprives the University of its substantial national goodwill and is likely to cause confusion, mistake and deception to consumers

as to the affiliation, connection, or association of Defendant's goods, services, or commercial activities with the University, and as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the University.  Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University. Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

44.     Defendant's unauthorized acts constitute direct infringements of the University's rights in the University Marks in violation of Section 32(1) of the Lanham Act, 28 U.S.C. § 1114(1)(a).

45.     The aforesaid conduct of Defendant is willful, deliberate, intentional, and in bad faith in that Defendant infringed and continued to infringe the University Marks with full knowledge that the University owns and has the exclusive right to use the University Marks, and after notice from the University to cease its infringing activities.

46.     The University is informed and believes, and on that basis alleges, that Defendant will continue to use the University Marks and other trademarks of the University unless enjoined.

47.     As a direct and proximate result of Defendant's conduct, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

48.     Pursuant to 15 U.S.C. § 1117(a), the University is entitled to an accounting for, and a disgorgement of, all of Defendant's revenues and/or profits derived from its infringing use of the

University Marks in connection with the "Unofficial" t-shirt and any other t-shirts or goods, as well as any damages the University has suffered and the costs of bringing this action.

49.     Additionally, by reason of the willful and deliberate acts conducted by Defendant in conscious disregard for the rights of the University, the University is entitled to treble damages under 15 U.S.C. § 1117(a).

50.     Furthermore, the University is entitled to recover its attorneys' fees as Defendant's actions were willful and deliberate, and particularly egregious given the unauthorized use of the University's trademarks in connection with goods of questionable taste that expressly extol "drinking" and "debauchery," rendering this an "exceptional" case under 15 U.S.C. § 1117(a).

**COUNT II:**
**FALSE DESIGNATION OF ORIGIN, FALSE ADVERTISING**
**AND UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a))**

51.     The University incorporates by reference the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

52.     The University owns, has the exclusive right to use, and  uses the University Marks in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

53.     The University has spent substantial amounts of money and effort developing the University Marks, as well as goodwill and reputation in its business.

54.     The University has the exclusive right to market, brand, and sell goods throughout the United States using the University Marks.

55.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of

fact, or false or misleading representation of fact, which – is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods, services, or commercial activities . . . shall be liable in a civil action . . . ."

56.     Defendant has, without consent or authorization from the University, used the University Marks to manufacture, sell, offer to sell, distribute and/or advertise products and services which are the same type of goods that are offered by the University (*i.e.*, t-shirts), and which are of questionable taste and legality through its website.

57.     The use of the University Marks by Defendant deprives the University of its substantial national goodwill and is likely to cause confusion, mistake and deception to consumers as to the affiliation, connection, or association of Defendant's goods, services, or commercial activities with the University, and as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by the University.  Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University. Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

58.     Defendant's unauthorized acts constitute false designation of origin, false advertising and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

59.     The aforesaid conduct of Defendant is willful, deliberate, intentional, and in bad faith in that Defendant infringed and continued to infringe the University Marks (a) with full knowledge that the University owns and has the exclusive right to use the University Marks, (b)

with the intention of causing a likelihood of confusion and mistake and to deceive, and (c) after notice from the University to cease its infringing activities.

60.     The University is informed and believes, and on that basis alleges, that Defendant will continue to use the University Marks and other trademarks of the University unless enjoined.

61.     As a direct and proximate result of Defendant's conduct, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

62.     Pursuant to 15 U.S.C. § 1117(a), the University is entitled to an accounting for, and a disgorgement of, all of Defendant's revenues and/or profits derived from its infringing use of the University Marks in connection with the "Unofficial" t-shirt and any other t-shirts or goods, as well as any damages the University has suffered and the costs of bringing this action.

63.     Additionally, by reason of the willful and deliberate acts conducted by Defendant in conscious disregard for the rights of the University, the University is entitled to treble damages under 15 U.S.C. § 1117(a).

64.     Furthermore, the University is entitled to recover its attorneys' fees as Defendant's actions were willful and deliberate, and particularly egregious given the unauthorized use of the University's trademarks in connection with goods of questionable taste that expressly extol "drinking" and "debauchery," rendering this an "exceptional" case under 15 U.S.C. § 1117(a).

## COUNT III:
## FEDERAL TRADEMARK DILUTION
### (15 U.S.C. § 1125(c))

65.     The University incorporates by reference the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

66.     The University owns, has the exclusive right to use, and uses the University Marks in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

67.     The University has spent substantial amounts of money and effort developing the University Marks, as well as goodwill and reputation in its business.

68.     The University has the exclusive right to market, brand, and sell goods throughout the United States using the University Marks.

69.     Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark."

70.     The University Marks are distinctive and have become famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

71.     Defendant has, without consent or authorization from the University, used the University Marks to manufacture, sell, offer to sell, distribute and/or advertise products and services, and which are of questionable taste and legality that expressly extol "drinking" and "debauchery," through its website.

72.     Defendant's use of the University Marks began long after the University Marks became famous.

73.     Defendant's unauthorized use of the University Marks has caused, and will continue to cause, dilution by blurring (based on the University's loss of control over its marks) and dilution by tarnishment (based on the "Unofficial" t-shirts' express association with

"drinking" and "debauchery") of the University Marks, with consequent damage to the University and the business and goodwill associated with it.

74.     Defendant's unauthorized acts constitute dilution and tarnishment of the University Marks in violation of 15 U.S.C. § 1125(c).

75.     The aforesaid conduct of Defendant is willful, deliberate, intentional, and in bad faith in that Defendant infringed and continues to dilute the University Marks with full knowledge that the University owns and has the exclusive right to use the University Marks, and with the willful intention of trading on the reputation of the University name and product line and causing dilution of the University Marks.

76.     The University is informed and believes, and on that basis alleges, that Defendant will continue to use the University Marks and other trademarks of the University unless enjoined.

77.     As a direct and proximate result of Defendant's conduct, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

78.     Pursuant to 15 U.S.C. § 1117(a), the University is entitled to an accounting for, and a disgorgement of, all of Defendant's revenues and/or profits derived from its infringing use of the University Marks in connection with the "Unofficial" t-shirt and any other t-shirts or goods, as well as any damages the University has suffered and the costs of bringing this action.

79.     Additionally, by reason of the willful and deliberate acts conducted by Defendant in conscious disregard for the rights of the University, the University is entitled to treble damages under 15 U.S.C. § 1117(a).

80.     Furthermore, the University is entitled to recover its attorneys' fees as Defendant's actions were willful and deliberate, and particularly egregious given the unauthorized use of the University's trademarks in connection with goods of questionable taste that expressly extol "drinking" and "debauchery," rendering this an "exceptional" case under 15 U.S.C. § 1117(a).

**COUNT IV:**
**VIOLATIONS OF THE ILLINOIS TRADEMARK REGISTRATION**
**AND PROTECTION ACT – TRADEMARK INFRINGEMENT**
**(765 ILCS § 1036/60)**

81.     The University incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

82.     At all relevant times, the Illinois Trademark Registration and Protection Act ("TRPA") was in effect in Illinois.

83.     Defendant's unauthorized use of the University Marks and other trademarks of the University, unless enjoined by this Court, will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, and/or certification of Defendant's goods, with consequent damage to the University and the business and goodwill associated with it.

84.     Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University.  Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

85.     Defendant's knowing and willful conduct, as described above, constitutes trademark infringement within the meaning of Section 60 of the TRPA, 765 ILCS  § 1036/60.

86.     As a direct and proximate result of Defendant's unauthorized acts, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both

substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

87.     The University is entitled to injunctive relief and monetary damages, as well as all profits and/or revenues gained by Defendant as a result of its unlawful acts, under 765 ILCS § 1036/70.

88.     Additionally, Defendant's willful conduct and reckless indifference to the University's rights entitles the University to a recovery of its reasonable attorneys' fees and treble damages pursuant to 765 ILCS § 1036/70.

**COUNT V:**
**VIOLATIONS OF THE ILLINOIS TRADEMARK REGISTRATION**
**AND PROTECTION ACT - DILUTION**
**(765 ILCS § 1036/65)**

89.     The University incorporates by reference the allegations contained in Paragraphs 1 through 88 as if fully set forth herein.

90.     At all relevant times, the Illinois Trademark Registration and Protection Act ("TRPA") was in effect in Illinois.

91.     The University Marks are distinctive and have become famous within the meaning of Section 65 of the TRPA, 765 ILCS § 1036/65, as well as Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

92.     Defendant has, without consent or authorization from the University, used the University Marks to manufacture, sell, offer to sell, distribute and/or advertise products and services, and which are of questionable taste and legality that expressly extol "drinking" and "debauchery," through its website.

93.     Defendant's use of the University Marks began long after the University Marks became famous.

94.    Defendant's unauthorized use of the University Marks has caused, and will continue to cause, dilution by blurring (based on the University's loss of control over its marks) and dilution by tarnishment (based on the "Unofficial" t-shirts' express association with "drinking" and "debauchery") of the University Marks, with consequent damage to the University and the business and goodwill associated with it.

95.    Defendant's knowing and willful conduct, as described above, constitutes dilution and tarnishment of the University Marks within the meaning of Section 65 of the TRPA, 765 ILCS § 1036/65.

96.    As a direct and proximate result of Defendant's unauthorized acts, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

97.    The University is entitled to injunctive relief and monetary damages, as well as all profits and/or revenues gained by Defendant as a result of its unlawful acts, under 765 ILCS § 1036/70.

98.    Additionally, Defendant's willful conduct and reckless indifference to the University's rights entitles the University to a recovery of its reasonable attorneys' fees and treble damages pursuant to 765 ILCS § 1036/70.

**COUNT VI:**
**VIOLATIONS OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510/1, *et seq.*)**

99.    The University incorporates by reference the allegations contained in Paragraphs 1 through 98 as if fully set forth herein.

100. At all relevant times, the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") was in effect in Illinois.

101. Defendant's unauthorized use of the University Marks, unless enjoined by this Court, will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, and/or certification of Defendant's goods. Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University. Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

102. Defendant's knowing and willful conduct, as described above, constitutes deceptive trade practices within the meaning of Section 2 of the UDTPA, 815 ILCS § 510/2.

103. As a direct and proximate result of Defendant's unauthorized acts, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

104. The University is entitled to entry of permanent injunctive relief prohibiting Defendant from continuing its infringing use of the University Marks in violation of the UDTPA, and an award of compensation for any all and all damages, injury or harm incurred as a result of Defendant's unlawful conduct.

105. Defendant's willful conduct and reckless indifference to the University's rights entitles the University to a recovery of its attorneys' fees and costs pursuant to 815 ILCS § 510/3, as well as punitive damages.

### COUNT VII:
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD
## AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS § 505/1, *et seq.*)

106.    The University incorporates by reference the allegations contained in Paragraphs 1 through 105 as if fully set forth herein.

107.    At all relevant times, the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA") was in effect in Illinois.

108.    Defendant's unauthorized use of the University Marks, unless enjoined by this Court, will continue to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, and/or certification of Defendant's goods.   Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University.   Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

109.    Defendant's knowing and willful conduct, as described above, constitutes deceptive trade practices within the meaning of Section 2 of the UDTPA, 815 ILCS  § 510/2.  As such, Defendant's conduct also violates Section 2 of the CFA, 815 ILCS § 505/2.

110.    As a direct and proximate result of Defendant's unauthorized acts, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

111.    The University is entitled to recover its actual damages under 815 ILCS § 505/10a.

112.    Additionally, Defendant's willful conduct and reckless indifference to the University's rights entitles the University to injunctive relief, as well as a recovery of its costs, attorneys' fees, and punitive damages pursuant to 815 ILCS § 505/10a.

**COUNT VIII:**
**COMMON LAW TRADEMARK INFRINGEMENT**

113.    The University incorporates by reference the allegations contained in Paragraphs 1 through 112 as if fully set forth herein.

114.    The University has spent substantial amounts of money and effort developing the University Marks, as well as goodwill and reputation in its business.

115.    The University Marks are the property of the University.

116.    The University owns, has the exclusive right to use, and  uses the University Marks throughout the United States in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

117.    The University Marks are integral parts of the University's business.

118.    Defendant's unauthorized use of the University Marks seeks to deprive the University of the substantial goodwill and exclusive rights in the University Marks, and is likely to cause confusion as to the source of Defendant's goods in that the public may associate such goods with and as originating from the University. Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University. Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

119.    Defendant's actions constitute a willful and intentional misappropriation of the University Marks, the University's exclusive rights in the University Marks, and the University's goodwill, in violation of the common law of trademark infringement of the State of Illinois.

120.    Defendant's actions have harmed and will continue to cause irreparable harm, damage and injury to the University, and the University has no adequate remedy at law for the injury caused and to be caused by Defendant's unauthorized acts.

121.    As a direct and proximate result of Defendant's conduct, the University has suffered, and is entitled to, damages in an amount to be proved at trial.

122.    Additionally, Defendant's willful conduct and reckless indifference to the University's rights entitles the University to injunctive relief, as well as a recovery of its costs, attorneys' fees, and punitive damages.

## COUNT IX:
## COMMON LAW UNFAIR COMPETITION

123.    The University incorporates by reference the allegations contained in Paragraphs 1 through 122 as if fully set forth herein.

124.    The University owns, has the exclusive right to use, and uses the University Marks in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

125.    Defendant, through its unauthorized use of the University's trademarks, has misappropriated valuable property rights of the University and has traded on the goodwill symbolized by the distinctive and well-known University Marks.  Defendant's use is likely to cause confusion and deceive members of the consuming public, in violation of the common law of unfair competition of the State of Illinois.  Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University.

Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

126.    Defendant's conduct, as described above, constitutes false designation of origin and is likely to cause confusion, mistake, or deception in violation of the common law of the state of Illinois, in the forms of trademark infringement and unfair competition.

127.    Defendant's actions have harmed and will continue to cause irreparable harm, damage and injury to the University, and the University has no adequate remedy at law for the injury caused and to be caused by Defendant's unauthorized acts.

128.    As a direct and proximate result of Defendant's conduct, the University has suffered, and is entitled to, damages in an amount to be proved at trial.

129.    Additionally, Defendant's willful conduct and reckless indifference to the University's rights entitles the University to injunctive relief, as well as a recovery of its costs, attorneys' fees, and punitive damages.

**COUNT X:**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**AND CONTRIBUTORY UNFAIR COMPETITION**
**(15 U.S.C. §§ 1114(1)(a), 1125(a), 1125(c); 765 ILCS § 1036/1, *et seq.*; common law)**

130.    The University incorporates by reference the allegations contained in Paragraphs 1 through 129 as if fully set forth herein.

131.    The University owns, has the exclusive right to use, and uses the University Marks in connection with a wide range of goods and services, including, but not limited to, t-shirts and other wearing apparel.

132.    The University has spent substantial amounts of money and effort developing the University Marks, as well as goodwill and reputation in its business.

133.    The University has the exclusive right to market, brand, and sell goods throughout the United States using the University Marks.

134.    Defendant has, without consent or authorization from the University, knowingly produced and contributed to third parties' re-sale, offers for re-sale, distribution and/or advertisement of products and services bearing the University Marks which are of questionable taste and legality, with the intent that said third parties would put the products or services to use in committing the violations. Such conduct has deprived the University of its substantial national goodwill and is likely to cause confusion, mistake and deception to perspective or actual consumers, as well as dilution and tarnishment of the distinctive quality of the University Marks.

135.    Those familiar with the University Marks would be likely to buy Defendant's goods as and for a product made and sold by the University.  Accordingly, any defect, objection or fault found with Defendant's goods, or any negative association connected therewith, would necessarily reflect negatively upon and seriously injure the reputation and goodwill which the University has established for its products sold under its University Marks.

136.    Defendant was either willfully blind to any ongoing violations of the University's rights in the University Marks, or intentionally supplied these third parties with products or services despite knowing that they were engaging in infringing activities.  By reason thereof, Defendant is contributorily responsible for the harm that has resulted to the University from the infringing activities of these third parties.

137.    Defendant's unauthorized acts constitute contributory infringement of the University's rights in the University Marks, as well as contributory unfair competition, in violation

of Sections 32(1), 43(a), and 43(c) of the Lanham Act, 28 U.S.C. §§ 1114(1)(a), 1125(a) and 1125(c), Sections 60 and 65 of the TRPA, 765 ILCS §§ 1036/60 and 1036/65, and the common law.

138.    The aforesaid conduct of Defendant is willful, deliberate, intentional, and in bad faith in that Defendant's acts of contributory infringement of the University Marks were performed with full knowledge that the University owns and has the exclusive right to use the University Marks, and after notice from the University to cease its infringing activities.

139.    The University is informed and believes, and on that basis alleges, that Defendant will continue to use the University Marks and other trademarks of the University unless enjoined.

140.    As a direct and proximate result of Defendant's acts of contributory infringement, the University has suffered, and will continue to suffer, unless said conduct is enjoined by this Court, both substantial monetary damages, in an amount to be proven at trial, and substantial irreparable injury to its goodwill and reputation for which there is no adequate remedy at law.

141.    Pursuant to 15 U.S.C. § 1117(a) and 765 ILCS § 1036/70, the University is entitled to an accounting for, and a disgorgement of, all of Defendant's revenues and/or profits derived from its infringing use of the University Marks in connection with the "Unofficial" t-shirt and any other t-shirts or goods, as well as any damages the University has suffered and the costs of bringing this action.

142.    Additionally, by reason of the willful and deliberate acts conducted by Defendant in conscious disregard for the rights of the University, the University is entitled to treble damages under 15 U.S.C. § 1117(a) and 765 ILCS § 1036/70.

143.    Furthermore, the University is entitled to recover its attorneys' fees as Defendant's actions were willful and deliberate, and particularly egregious given the unauthorized use of the

University's trademarks in connection with goods of questionable taste that expressly extol "drinking" and "debauchery," rendering this an "exceptional" case under 15 U.S.C. § 1117(a) and 765 ILCS § 1036/70.

### PRAYER FOR RELIEF

WHEREFORE, as to all Counts of this Complaint, the University prays for judgment as follows:

(A)    A finding that:

    (1)    Defendant has engaged in acts of direct and/or contributory trademark infringement, false designation of origin, false description or unfair competition, and trademark dilution in violation of 15 U.S.C. §§ 1114(1)(a), 1125(a), and 1125(c);

    (2)    Defendant has engaged in acts in violation of the Illinois Trademark Registration and Protection Act, 765 ILCS 1036/1, et seq., Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, et seq.; and

    (3)    Defendant has engaged in unfair competition and trademark infringement in violation of the common law of the State of Illinois.

(B)    Permanent injunctive relief, granted pursuant to 15 U.S.C. § 1116(a) and other applicable Illinois statutory and common law, in the form of an Order prohibiting Defendant, and all others acting in concert or participating with Defendant, from any further use or direct or contributory infringement of the University Marks or any other University trademarks. This relief specifically includes the following prohibitions:

    (1)    directly or indirectly manufacturing, selling, offering for sale, distributing, producing, circulating, and/or advertising products or services which bear any copy or colorable imitation of the University's trademarks, and which are likely to cause confusion, to cause mistake, or to cause deception with or with respect to the University's trademarks;

    (2)    using in any manner the University Marks or any other trademark, trade name, service mark, corporate name, or any other designation that is

confusingly similar to the University's trademarks as to be likely to cause confusion, deception, or mistake;

(3)     passing off, inducing, or enabling others to sell or pass off any goods or services as being approved by the University, which goods and services are not in fact approved by the University, or for sale under the marks owned by the University or any other mark which so resembles the University's marks as to be likely to cause confusion, deception, or mistake;

(4)     committing any acts, including use of any false designation of origin or false description, which can or is likely to lead the trade or public, or individual members thereof, to mistakenly believe that any product or service advertised, promoted, offered, or sold by Defendant is sponsored, endorsed, connected with, approved, or authorized by the University;

(5)     imitating, copying, duplicating, or otherwise making any use of the University trademarks or any mark confusingly similar to the University's trademarks;

(6)     engaging in any other act constituting unfair competition or deceptive practices with the University or constituting an infringement of the University's rights in and to its trademarks;

(7)     further diluting and infringing the University's trademarks and damaging its goodwill; and

(8)     supplying any other person or business entity with products, services, or other resources sufficient to enable, engage, or perform any of the infringing activities enumerated in subparagraphs (1) to (7) above, or otherwise inducing, assisting, aiding, or abetting another person or business entity in such infringing activities.

(C)     An Order against Defendant for any and all damages available pursuant to 15 U.S.C. § 1117(a) and other applicable Illinois statutory and common law, in amount to be proven at trial, and specifically including but not limited to: (1) monetary damages sustained by the University, including treble damages; (2) all gains, revenues, profits and/or advantages earned as a result of the unlawful acts of Defendant as set forth herein; (3) costs and pre-judgment interest; and (4) reasonable attorneys' fees.

(D)     Such other and further preliminary and final relief that the Court deems just, equitable and proper, including an award of punitive and exemplary damages.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts so triable.

Date: September 6, 2012                    Respectfully submitted,

THE BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS, Plaintiff


By:     ___/s/ David L. Ter Molen_____
                    One of Its Attorneys


David L. Ter Molen
FREEBORN AND PETERS LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois  60606
(312) 360-6000
dtermolen@freebornpeters.com

*Attorneys for Plaintiff*

2645841v8/14615-0059

29

## VERIFICATION

I, Martin Kaufmann, being duly sworn under oath, hereby declare and verify under penalty of perjury under the laws of the United States of America that the statements set forth in the attached Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
MARTIN KAUFMANN

SUBSCRIBED AND SWORN to before me
this 5ᵗʰ day of September 2012

_____
Notary Public

OFFICIAL SEAL
CAROL J. HANNAH
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2-6-2016